UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, LOCAL LODGE PM2848,
DEFINED BENEFIT PENSION FUND,

Case No. 06-13791

Honorable John Corbett O'Meara

    Plaintiff,

v.

MICHIGAN GAGE SPECIALISTS, INC.,

    Defendant,

JEFFREY HUDOCK,

    Garnishee Defendant.
                              /

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on the plaintiff pension fund's September 12, 2008 motion for summary judgment. Garnishee defendant Jeffrey Hudock filed a late response November 3, 2008; and Plaintiff filed a reply brief November 13, 2008. Oral argument was heard November 20, 2008.

**BACKGROUND FACTS**

The court granted plaintiff IAMAW Pension Plan a judgment against defendant Michigan Gage Specialties ("MGS") on December 14, 2006. About two weeks later, the operations of Michigan Gage "Specialties" were transferred to Michigan Gage "Manufacturing." Michigan Gage "Specialties" went out of business January 1, 2007; and Plaintiff received nothing on its judgment. Jeffrey Hudock, owner of MGS, did not receive any direct payments in this sale. However, he did

receive a "consulting agreement" as part of the transaction. Hudock has so far refused to disclose how much he received under the agreement.

Plaintiff served a garnishment upon Hudock, who filed a disclosure asserting he did not owe any money to MGS. Discovery has revealed, however, that Hudock took $1,893,316 in dividends during the last two years ($1,265,522 in 2005 and $627,794 in 2006) before closing MGS even though MGS was not paying its creditors.

MGS lost its most profitable work in 2005 ending the year with a negative value of -$976,667. In spite of this, it paid dividends to Hudock in 2005. Those dividends continued until October 2006 despite the fact that Mike Porath, the new owner, "basically took over control of the company" on March 1, 2006. Hudock dep. at 22-22, 32-33.

## **LAW AND ANALYSIS**

Garnishments in federal court are handled in "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). If there is a dispute whether the garnishee owes a liability, the issue is tried in the same manner as other civil actions. MCR 3.101(M)(1). The garnishment serves as the complaint. MCR 3.101(M)(2). The garnishee disclosure serves as the answer. MCR 3.101(M)(2). If supported by the facts, summary judgment is appropriate in a garnishment proceeding. If a trial is needed, "the plaintiff may offer the record of the garnishment proceeding and other evidence, [and] [t]he garnishee may offer evidence not controverting the disclosure, or in the discretion of the court, may show error or mistakes in the disclosure." MCR 3.1010(M)(5). Judgment may be entered against the garnishee up to the amount of the unpaid judgment, interest, and costs as stated in the garnishment. MCR 3.101(O)(1).

The owner of a company may not place him/herself ahead of the company's creditors by taking dividends while the company's debts go unpaid. American Steel & Wire Co. v. Eddy, 130 Mich. 266 (1902). The Michigan Business Corporations Act prohibits the payment of dividends to the owner of a company when that company is unable to pay its creditors in full. Mich. Comp. Laws Ann. § 450.1345(3).

Plaintiff asserts that Jeffrey Hudock has admitted that he paid himself $1,893,316 in dividends while MGS was insolvent and its creditors went unpaid. Since he owes MGS more than the amount of Plaintiff's garnishment, Plaintiff contends that it is entitled to a judgment upon its garnishment in the amount of $348,131.33 (the judgment of $308,014.68 plus interest through March 6, 2008, of $40,116.56).

In his response brief, Hudock claims that he used the payments to repay his personal loan to Comerica Bank in order to keep MGS in business, an action he defends under the Business Judgment Rule, Mich. Comp. Laws Ann. § 450.1551(2). Despite his attempt to re-characterize his 2006 dividends as a reasonable business decision, the facts Hudock admitted at his deposition foreclose such a re-characterization. Hudock admitted that he knew MGS was insolvent and chose to pay himself the dividends (even if it was in order to repay his loan from Comerica).

There is genuine issue of material fact regarding *when* Hudock knew that pension plan was not being paid. There is no dispute that Hudock paid Plaintiff MGS's quarterly obligation of $7,127.76 for ten years. However, Michael Porath assumed management of MGS on March 1, 2006, and ownership of MGS on January 1, 2007. Hudock claims that Porath "stopped paying the Pension Fund obligation the minute he walked in the door." Hudock's br. at 1.

3

In its reply brief, though, Plaintiff claims that "[o]n February 14, 2006, Carabell, Leslie & Company, Certified Public Accountants, informed Hudock that the liabilities of Michigan Gage exceeded its assets by $976,668, and that the pension fund was owed $356,557 [as of December 31, 2005]." Plaintiff's reply br. at 3. Hudock repeatedly claims that he knew nothing of the "missed payments or the Pension Fund's lawsuit until sometime in December 2006." Hudock's br. at 5.

Hudock also claims that there has been no discovery allowed regarding the MGS books after Porath took over management of the company and no discovery of Porath's personal finances.

Because of the genuine issues of material fact, the court cannot grant Plaintiff's motion for summary judgment.

## **ORDER**

It is hereby **ORDERED** that Plaintiff's September 12, 2008 motion for summary judgment is **DENIED.**

s/John Corbett O'Meara
United States District Judge

Date: December 15, 2008


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 15, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager

4